395 So.2d 319 (1980)
STATE of Louisiana
v.
Ben Lloyd McCOY.
No. 67702.
Supreme Court of Louisiana.
November 10, 1980.
Rehearing Denied December 15, 1980.
*321 Robert E. Piper, Jr., Piper & Brown, Shreveport, for defendant-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., James C. McMichael, Jr., Asst. Dist. Atty., for plaintiff-respondent.
LEMMON, Justice.
We granted defendant's application for supervisory writs in order to review his conviction of theft of electric utility services in violation of R.S. 14:67.6.[1] In his application defendant urged two assignments of error, both relating to the constitutionality of R.S. 14:67.6.
Vagueness
Defendant contends that the statute is unconstitutional because it fails to give adequate notice regarding conduct proscribed by its terms and fails to set forth ascertainable standards of guilt. R.S. 14:67.6 in pertinent part provides:
"A. Theft of utility service is the misappropriation or taking, or obtaining for use any electricity, gas or water manufactured, held for sale or distributed by any person, firm or corporation engaged in the manufacture, sale or distribution of electricity, gas or water, without the consent of, and with the intent to defraud such person, firm or corporation, by diverting by any means or device any quantity of electricity, gas, or water from the wires, cables, pipes or mains of such person, firm or corporation or by preventing the meter or meters furnished by such person, firm or corporation from properly registering the quantity of electricity, gas, or water passing through such meter or meters, or from registering the full amount of electricity, gas, or water actually used or consumed, or by diverting electricity, gas, or water around such meter or meters so as to interfere with the accurate registration of such meter or meters."
In denouncing the vagueness of the statute, defendant points to the use of such generic terms as "diverting", "preventing", and "interfering".
Words used in statutes need not have the same precision as mathematical symbols. Due process requires only that the language of a statute have generally accepted meaning so that a person of ordinary and reasonable intelligence is capable of discerning its proscriptions and is given fair notice of the conduct which is forbidden by its terms. State v. Gisclair, 363 So.2d 696 (La.1978); State v. Lindsey, 310 So.2d 89 (La.1975); State v. Defrances, 351 So.2d 133 (La.1977); State v. Dousay, 378 So.2d 414 (La.1979).[2]
*322 The terms complained of as vague have well understood meanings in the context of their use in the statute. This contention is plainly without merit.
Unconstitutionality of the Prima Facie Evidence Provision
The portion of the statute defining the offense requires the state to prove that the accused obtained utility service without the consent of and with intent to defraud the utility company, either by preventing the meter from accurately measuring service or by diverting service around the meter (thereby preventing accurate registration of service).[3] The statute clearly requires proof of the accused's fraudulent intent and of his act or his guilty knowledge of the acts of others in hindering accurate registration of utility service.[4] See R.S. 14:24.
Defendant attacks R.S. 14:67.6 B as creating an unconstitutional presumption which infringes his right to require the state to prove all elements of the offense necessary to establish his guilt beyond a reasonable doubt. La.Const. art. 1, § 16 (1974); U.S.Const. Amend 14; Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Section B provides:
"B. The presence at any time on or about any wire, cable, pipe, main or meter, or the equipment to which said wire, cable, pipe, main or meter is affixed or attached, or any device or devices resulting in diversion of electricity, gas or water or any device resulting in the prevention of the proper action or accurate registration of the meter or meters used to measure the amount of utility services rendered, or interfering with the proper action or accurate registration of such meter or meters, shall constitute prima facie evidence of knowledge of the person, firm or corporation having custody or control of the room, structure or place where such device or wire, cable, pipe, main or meter is located, and benefiting from the misappropriation of such utility service, and shall constitute prima facie evidence of the intention on the part of such person, firm or corporation to defraud and shall bring such person, firm, or corporation prima facie within the scope, meaning, and penalties provided in Subsection C herein."
Section B was obviously designed to shift effectively the burden of proof to the defendant, once the prosecution proves that defendant benefited by certain described means which prevented the meter from accurately *323 measuring the use of utility service. By the statute's terms, evidence of the mere presence of any device which achieves that result establishes a prima facie case of both guilty knowledge and intent to defraud on the part of the defendant.[5] But the statute goes further: it explicitly provides in effect that a prima facie case of guilt has been established once the state proves such tampering (by anyone) which benefits the defendant, stating that proof of such tampering "shall bring such person ... prima facie within the scope, meaning, and penalties ..." of R.S. 14:67.6. Section B thus requires the state to prove only the described tampering and then throws the burden upon the accused to explain why he is the innocent beneficiary.
Under both Louisiana and federal constitutions, the state is obliged to shoulder the burden of proving that the defendant was criminally responsible for the unauthorized diversion of utility service (or for the failure of the meter accurately to measure his use of the service). No statute can constitutionally require the defendant to prove that he was not responsible; that is, that he was an innocent beneficiary. R.S. 14:67.6 B plainly allocates the burden of proof in an unconstitutional fashion.
Once the Legislature has determined the elements of an offense, the constitutional principles of due process require the prosecution to prove those elements beyond a reasonable doubt. See In Re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Legislature cannot thereafter create a presumption which effectively shifts the burden of proof of an elemental fact unless the facts, which are necessary to be proved to bring the presumption into effect, establish the elemental fact beyond a reasonable doubt. See State v. Daranda, 388 So.2d 759 (La.1980), upholding the mandatory presumption created by the relationship of a certain percentage of blood alcohol and the state of being under the influence of alcohol; see also County Court of Ulster County v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Discussing this standard in Daranda, we said:
"Ulster defined a mandatory presumption as one that tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to refute the presumed connection between the two. Generally, the presumption is examined on its face to determine the extent to which the basic and elemental facts coincide. In order to sustain the use of a mandatory presumption to prove an essential element of an offense, the fact proved must be sufficient to support the inference beyond a reasonable doubt." 388 So.2d at 761.
Here, the elemental facts of "guilty knowledge" and "intent to defraud" are not established beyond a reasonable doubt by a mere showing that diversion has occurred to defendant's benefit. In our modern society, there are simply too many other explanations. As the Supreme Court of Florida said in MacMillan v. State, 358 So.2d 547:
"Sub judice, we need not consider whether the subject statutorily created presumption meets the reasonable doubt standard since we agree with appellant that it does not satisfy the rational connection standard. Under the challenged statute, the presumed fact of intent to violate and of violation comes into play merely upon proof that the property wherein diversion of some sort has occurred is in the actual possession of the accused or upon proof that the accused has received direct benefit from a utility. We find that it cannot be said with substantial assurance that the presumed fact that defendant is guilty of violation of Section 812.14, Florida Statutes (Supp. 1976), is more likely than not to flow from the proved fact of possession of the premises or receipt of benefits. One in actual possession of property or one receiving direct benefits would not more likely than not be the guilty person. Such an inference is irrational and arbitrary.

*324 Common experience tells us that the device or apparatus tampered with or altered is generally on the outside of a building and accessible to anyone; that the direct benefits from the use of electricity, gas, water, heat, oil, sewer service, telephone service, telegraph service, radio service, communication service, television service, or television community antenna line service are commonly derived by any occupant of the premises, including family members, business partners, associates, employees and others; and that the billing which would constitute notice of possible alteration is done no more frequently than monthly. Furthermore, there are many ways to make an alteration which are so simple in nature that a prankster, a vandal or an angry neighbor could utilize them to cause the one in possession of the premises to receive benefits therefrom without his knowledge and, thereby, subject him to the presumption." 358 So.2d at 549-550.
Furthermore, proof of the underlying facts in this case do not leave the trier of fact free to accept or reject their relationship to the guilt of the accused, and thus the burden of proof is unconstitutionally shifted to the defendant. Here, the statute provides that the trier of fact is presented with prima facie evidence of guilt unless the accused comes forward with "some evidence to rebut the presumed connection between the two facts". County Court of Ulster County v. Allen, above.
We will not attempt to redraft this statute to create a permissive inference because the language of the statute obviously creates a "prima facie" case of guilt. Compare State v. Hammontree, 363 So.2d 1364 (La. 1978); Hammontree v. Phelps, 605 F.2d 1371 (5th Cir. 1979); State v. Lollar, 389 So.2d 1315 (La.1980) (Lemmon, J., concurring). Thus, we need not decide whether there is a "rational connection between the facts proved and the fact presumed-a connection grounded in `common experience'." Hammontree v. Phelps, above, at 1374 (quoting from Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).
Nevertheless, the constitutionally deficient provisions of Section B are clearly severable.[6] While the language of Section B effects an unconstitutional shift of burden of proof, the remainder of the statute is valid, and the state should be allowed to prosecute defendant under the constitutionally valid provisions of R.S. 14:67.6 A defining the offense. Proof of tampering to the benefit of the accused is certainly relevant and is doubtlessly probative (although not conclusive) of culpability.
We therefore declare unconstitutional R.S. 14:67.6 B. Because defendant was charged with a crime punishable under a valid statute (R.S. 14:67.6 A), the trial court's denial of the motion to quash the bill of information was technically correct. Nevertheless, since defendant pleaded guilty with reservation of his right to urge the unconstitutionality of the statute on appellate review, the conviction based on the guilty plea must be set aside.[7] The matter is remanded to the trial court with *325 instructions to permit the defendant to withdraw his plea of guilty, and for further proceedings.
REMANDED WITH INSTRUCTIONS.
MARCUS, J., dissents and assigns reasons.
DENNIS, J., concurs.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that La.R.S. 14:67.6(B) unconstitutionally shifts the burden of proof to the defendant. In County Court of Ulster County, New York v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Supreme Court discussed evidentiary presumptions and their validity under the due process clause. In criminal cases, the ultimate test of validity is that the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the state, to find the ultimate facts beyond a reasonable doubt. The Court defined a permissive presumption as one which allows-but does not require-the trier of fact to infer the elemental fact from proof by the prosecution of the basic one and that places no burden of any kind on the defendant. Under a permissive presumption, the basic fact may constitute prima facie evidence of the elemental fact. Because a permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.
La.R.S. 14:67.6(B) creates a permissive presumption as it allows, but does not require, the trier of fact to infer the elemental facts of knowledge and intent to defraud from proof by the prosecution of the basic facts of the presence of and the benefit from any device preventing the proper registration of the meter used to measure the amount of utility services rendered. The statute states that the presence of and the benefit from such devices (the basic facts) constitute prima facie evidence of knowledge and intent to defraud (the elemental facts of the crime). Hence, the presumption will not affect the application of the "beyond a reasonable doubt" standard unless, after trial on the merits, there is no rational way the trier could make the connection permitted by the inference. Accordingly, the validity of the use of the permissive presumption can only be determined after trial. In the instant case, because defendant pled guilty, he waived his claim of possible invalidity of its use. I respectfully dissent.
NOTES
[1] Since the offense is a misdemeanor and the fine did not exceed $500, the review is by supervisory writ. La.Const. art. 5, § 5 (1974).
[2] In the Dousay case we stated:

"With regard to the requirement of adequate notice, this court has held that the constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that a penal statute must describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. The due process clause of the Louisiana Constitution has also been found to demand that words and phrases employed in statutes or regulations may not be so vague and indefinite that any penalty prescribed for their violation constitutes the taking of liberty or property without due process of law. Similarly, a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of the due process clause of the Fourteenth Amendment of the United States Constitution.
"Both the constitutional guarantees of procedural due process and the right to a fair trial embodied in Article 1, § 16 of the Louisiana Constitution also require that a criminal enactment contain an ascertainable standard of guilt and that it `mark(s) boundaries sufficiently distinct for judges and juries to administer the law in accordance with the legislative will.' City of Baton Rouge v. Norman, 290 So.2d 865, 868, (La.1974). The United States Supreme Court has held that `[a] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it ... leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.' Giacco v. Pennsylvania, 382 U.S. 399, 403, [86 S.Ct. 518, 521, 15 L.Ed.2d 447.]
"The constitutional requirement of definiteness is satisfied when the language of a criminal enactment `has a generally accepted meaning such that a person of ordinary intelligence would be given fair notice of what conduct is forbidden.' State v. Defrances, 351 So.2d 133, 135 (La.1977), or when `the crucial words [or] phrases in the criminal statute have a fixed and definite meaning for a person of ordinary intelligence'." State v. Cloud, 248 La. 125, 130, 176 So.2d 620, 622 (1965)." 378 So.2d at 416. (Some citations omitted.)
[3] The statute was obviously enacted to create a special offense for wrongfully obtaining utility service without paying for the service actually received. The same conduct is covered by R.S. 14:67 and 14:2(2).
[4] The statute does not create strict criminal liability when a person benefits from the acts of another without his knowledge. If the statute proscribed one's being the "unknowing" beneficiary of someone else's unlawful efforts to cause the utility company to suffer a loss due to inaccurate registration of service, such a statute might offend constitutional principles. As we recently said in State v. Brown, 389 So.2d 48 (La.1980), "the `vicious will' has been replaced with less colorful descriptions of the mental state required for a criminal act; nevertheless, intent generally remains an indispensable element of a criminal offense". 389 So.2d at 50. See also Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957).
[5] Prima facie evidence is defined as evidence sufficient to establish a given fact, which if not rebutted or contradicted will remain sufficient. See Black's Law Dictionary (5th Ed. 1979).
[6] Acts 1977, No. 308, enacting R.S. 14:67.6, contains the standard severability clause. We often only strike the offending provisions and leave the remainder of the statute intact. See State v. Brown, 384 So.2d 425 (La.1980).
[7] This case exemplifies a problem of which the court was aware when, in State v. Crosby, 338 So.2d 584 (La.1976), the court recognized the discretion of the trial court to accept a qualified guilty plea reserving the right to seek review of specified pre-plea rulings of the trial court. Although the unconstitutional prima facie evidence provision of R.S. 14:67.6 B played no real part in defendant's conviction, it cannot reasonably be said that the invalid provision played no part in defendant's decision to plead guilty.

Perhaps the procedural aspect of this case would have been clearer if defendant had sought writs after the trial court declined to declare the statute unconstitutional in ruling on defendant's motion to quash. But when the trial court accepted the plea and when we thereafter granted writs of review, it was understood that our review would relate to the validity of the prima facie evidence provision of the statute. We therefore treat the constitutional issue as properly presented by the motion to quash and recognize that the issue was not rendered moot by the intervening guilty plea.