657 P.2d 432

STATE of Arizona, Appellee,

v.

Thomas Charles FORRESTER, Appellant.

No. 1 CA–CR 5462.

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 21, 1982.

Rehearing Denied Dec. 10, 1982.

Review Denied Jan. 11, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div. and Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Deputy Public Defender, Phoenix, for appellant.

## OPINION

MEYERSON, Judge.

This is an appeal from a conviction of one count of theft of property in excess of $1,000 and twenty-two counts of fraudulent use of a credit card. For the reasons hereinafter stated, we affirm the conviction of theft and eleven counts of fraudulent use of a credit card. The remaining convictions are reversed.

## I. FACTS.

Appellant Thomas Charles Forrester was originally charged with one count of theft of property with a value of more than $1,000 and thirty-nine counts of fraudulent

use of a credit card. The indictment by the state grand jury arose out of Forrester's misuse of a check guarantee card. The trial court granted the state's motion to dismiss sixteen counts of fraudulent use of a credit card. Forrester admitted to one prior felony conviction in exchange for the state's agreement not to prove four other prior convictions.

The state's case began with testimony by bank employees who worked at the branch office of First National Bank used by Forrester. In January, 1980, the bank began receiving checks written by Forrester guaranteed by his bank credit card and drawn against insufficient funds. On February 14, a bank official went to Forrester's home to retrieve the check guarantee card. The bank employee spoke personally with Forrester and explained that he had been "misusing" the check guarantee card. According to her testimony, she told Forrester that she was there to pick up the card. He said that he had lost the card. He believed it was misplaced in his bedroom which was in a "great deal of disorder." He said that he would return the card if he found it.

On February 22, the bank sent a written notice to Forrester informing him that his check guarantee card had been cancelled. The letter was sent return receipt requested and it was signed by Jay Morris, the son of a woman living with Forrester at the time. Forrester claimed he never received any notice of the cancellation. Through the end of February, the bank continued to receive Forrester's checks drawn against insufficient funds.

On March 22, an investigator for the bank went to Forrester's home, informed him that his account had been closed and demanded the return of the card. Forrester signed a document thereby closing his account; he told the investigator the card had been stolen. The balance of the state's case concerned testimony by numerous retail merchants regarding the bad checks which Forrester had passed using the guarantee card. Forrester continued to write these checks through July, 1980.

The testimony indicated that the check guarantee card issued to Forrester was at all times the property of the bank. The terms of the check guarantee agreement provided that the bank would guarantee payment of checks drawn against it upon presentation of the card. Forrester agreed not to write any checks against insufficient funds and to promptly repay the bank if that happened. He also agreed to return the card to the bank immediately upon request.

Forrester testified that he was undergoing severe stress during this period and was heavily intoxicated most of the time. He argued that due to his intoxication, he did not have the necessary criminal intent required under the statute.

Forrester was found guilty of one count of theft and twenty-two counts of fraudulent use of a credit card. With respect to count one, he was sentenced to serve five years in the custody of the Department of Corrections and with respect to each count of fraudulent use of a credit card he was sentenced to serve one and one-half years; all of the sentences were concurrent with each other. He was given credit for 174 days of pre-sentence incarceration.

II. THEFT.

Forrester contends that his conviction for one count of theft under A.R.S. § 13–1802 should be reversed because (1) the definition of value in A.R.S. § 13–1801.8.[1] is un-

---

1. 'Value' means the fair market value of the property or services at the time of the theft. Written instruments which do not have a readily ascertained market value have as their value either the face amount of indebtedness less the portion satisfied or the amount of economic loss involved ... whichever is greater. When property has undeterminable value, its value shall be determined by the trier of fact and, in reaching its deci-

sion, all relevant evidence may be considered including evidence of such property's value to its owner.
A.R.S. § 13–1801.8. Forrester's argument is without merit. In this case, the jury was not left without guidance to determine value because the economic loss to the bank was readily ascertainable. Forrester lacks standing to challenge the constitutionality of a portion of a

constitutionally vague, (2) a credit card is not a written instrument within the meaning of A.R.S. § 13–1801.8 (the trial court used the definition of written instrument from the forgery statute) and (3) the trial court erred by failing to require the state to elect the theory under which it was proceeding with respect to the theft charge.

■ Forrester's contention that the theft statute does not encompass the theft of a credit card is incorrect. First, although written instrument is not defined in A.R.S. § 13–1801.8, a credit card is defined as "any instrument or device...." A.R.S. § 13–2101.3. We note also that the Arizona Criminal Code Commission found that the former statute dealing with credit card fraud "duplicates forgery and theft to a great degree...." Arizona Criminal Code Commission, Arizona Revised Criminal Code 205 (1975). We conclude that a credit card is a written instrument within the meaning of A.R.S. § 13–1801.8.

■ Second, Forrester contends that there is no "trust" relationship between him and the bank and therefore he cannot be convicted of violating A.R.S. § 13–1802.A.2. This statute is the successor to the former crime of embezzlement. A.R.S. §§ 13–681–682 (repealed 1978). Under the terms of the check guarantee card, he could obligate the bank to honor his checks regardless of whether or not he had funds in his account. Thus, the bank's funds were entrusted to Forrester within the meaning of A.R.S. § 13–1802.A.2. *See State v. Leeman,* 119 Ariz. 459, 581 P.2d 693 (1978) (embezzlement included fraudulent failure to return leased or rented personal property under predecessor statute to A.R.S. § 13–1802.-A.2); *People v. Schmidt,* 147 Cal.App.2d 222, 305 P.2d 215 (1957) (funds on deposit in bank which could be paid out by checks signed by corporate officer were sufficiently in his control to justify embezzlement charge).

Forrester argues that this statute was not intended to apply to a simple debtor-creditor relationship. Had the check guar-

statute not applied to him. *State v. Varela,* 120

antee agreement provided that Forrester was to pay interest to the bank on any outstanding balance owed by virtue of his overdrafts, a debtor-creditor relationship would have existed. But where Forrester has been given the use of the bank's money (the payment of his checks drawn against insufficient funds) without any corollary duty to pay interest on such funds, the element of trust has been injected into the relationship of the parties.

Forrester's final objection to his theft conviction is that the trial judge erred by failing to require the jury to specify under what theory it found him guilty. The indictment against Forrester charged him with theft by alleging that he controlled the property (the check guarantee card) of the bank with the intent to deprive it of the property, A.R.S. § 13–1802.A.1, or that he converted property entrusted to him for an unauthorized term or use. A.R.S. § 13–1802.A.2. The jury was instructed that it could find Forrester guilty of theft by finding that his conduct fit within either category.

■ If a statute describes a single offense which may be committed in more than one way, it is unnecessary for there to be unanimity as to the means by which the crime is committed provided there is substantial evidence to support each of the means charged. If, however, the statute sets forth several distinct acts and makes the commission of each a separate crime there must be a unanimous verdict as to each separate crime described. *State v. Dixon,* 127 Ariz. 554, 622 P.2d 501 (Ct.App. 1981); *State v. Arndt,* 87 Wash.2d 374, 553 P.2d 1328 (1976).

■ To determine under which category a statute belongs, consideration should be given to:

(1) The title of the act;

(2) Whether there is a readily perceivable connection between the various acts set forth;

(3) Whether the acts are consistent with and not repugnant to each other;

Ariz. 596, 599, 587 P.2d 1173, 1176 (1978).

(4) Whether the acts may inhere in the same transaction.

*Dixon,* 127 Ariz. at 561, 622 P.2d at 508.

*Title of the Act.* The heading on A.R.S. § 13–1802, "Theft; classification," summarizes the statute as dealing with a single offense. *Dixon. Id.*

*Connection Between Acts.* A violation of A.R.S. § 13–1802.A.1. requires control of the property of another. A violation of A.R.S. § 13–1802.A.2. requires the conversion of the property of another for an unauthorized term or use. Because this could hardly be accomplished without control, there is a readily perceivable connection between the acts described in the paragraphs. Indeed, the jury could not find that Forrester violated A.R.S. § 13–1802.-A.2. without necessarily finding that the elements of A.R.S. § 13–1802.A.1. also were violated.

*Acts Consistent or Repugnant.* The ways in which a crime may be committed are repugnant to each other if proof of one disproves the other. *State v. Pettit,* 74 Wash. 510, 518–519, 133 P. 1014, 1018 (1913). Proof that one controlled the property of another with the intent to deprive him of it is not inconsistent with keeping property for an unauthorized time or using it for an unauthorized purpose. In *Pettit,* it was held not to be repugnant for the defendant to be charged with committing larceny by false pretenses and also by a bailee or trustee; conduct quite similar to that herein.

*Whether the Acts Inhere in the Same Transaction.* Here, the "acts" are the possession of the property of another. They are the same act under either section of the statute.

■ On the basis of the foregoing, we conclude that the court was not required to submit the case to the jury on multiple forms of verdict.

## III. CREDIT CARD FRAUD.

With respect to his conviction for twenty-two counts of fraudulent use of a credit card, A.R.S. § 13–2105, Forrester contends that the trial judge's instruction to the jury created a mandatory presumption in violation of the due process clause of the fourteenth amendment to the United States Constitution. We agree.

■ Forrester was convicted under A.R.S. § 13–2105.A.1 which provides in relevant part as follows:

A. A person commits fraudulent use of a credit card if such person:

1. With intent to defraud, uses, for the purposes of obtaining money, goods, services or any other thing of value, a credit card . . . which such person knows is forged, expired, cancelled or revoked . . . .

A cancelled or revoked credit card is one which is no longer valid because it has been revoked or terminated by the issuer of the card "by written notice sent by certified or registered mail addressed to the person to whom such credit card was issued at such person's last known address." A.R.S. § 13–2101.1. The statute further provides that "[s]uch written notice shall be presumed to have been given to any cardholder when deposited as certified or registered matter in the United States mail addressed to the person to whom the credit card was issued at such person's last known address." *Id.* Thus, the elements of the crime of fraudulent use of a credit card are the defendant must (1) with intent to defraud, (2) use, (3) for the purpose of obtaining money, goods, services or any other thing of value, (4) a credit card, (5) which such person knows, (6) is cancelled or revoked.

■ Forrester contends that the constitutional infirmity in the statute is that knowledge of cancellation is to be presumed upon the depositing of the certified or registered letter in the mail. As shown above, A.R.S. § 13–2101.1 provides that the notice of cancellation "shall be presumed to have been given to any cardholder" when it is deposited in the mail. Because the statute provides that knowledge that the credit card is cancelled is to be presumed from the mere mailing of notice of cancellation, the statute and the jury instruction which was taken

directly from the statute, create an unconstitutional mandatory presumption of an element of the offense charged.

The state argues that the presumption deals only with receipt of the bank's notice of cancellation. According to the state, A.R.S. § 13–2101.1 does not provide that the cardholder shall be presumed to have knowledge of the cancellation but only deals with the legal concept of notice. This argument however, ignores the plain wording of the statute:

> [N]otice shall be presumed to have been given to any cardholder when deposited as certified or registered matter in the United States mail....

A.R.S. § 13–2101.1. Furthermore, any other meaning attached to the foregoing language would make the statute redundant because the immediately preceding sentence provides that a credit card is to be cancelled or revoked by mailing written notice to the cardholder by certified or registered mail. We must assume that the legislature did not enact a redundant provision, *State v. Edwards,* 103 Ariz. 487, 446 P.2d 1 (1968), and we must give ordinary meaning to the plain and unambiguous language of a statute unless it appears from the context or otherwise that a different meaning should control. *State v. Stone,* 122 Ariz. 304, 594 P.2d 558 (Ct.App.1979). We find that the statute unequivocally requires knowledge of cancellation to be presumed from the mailing of the written notice.

The United States Supreme Court and the Arizona Supreme Court recently have considered the issue of conclusive presumptions. *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Sandstrom v. State of Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *State v. Mincey,* 130 Ariz. 389, 636 P.2d 637 (1981).

In *Ulster County,* the Court considered the constitutionality of a New York statute which provided that the presence of a firearm in an automobile is presumptive evidence of its illegal possession by all persons then occupying the vehicle. The trial judge's instructions made it clear that the

presumption "was merely a part of the prosecution's case, that it gave rise to a permissive inference available only in certain circumstances, rather than a mandatory conclusion of possession, and that it could be ignored even if there was no affirmative proof offered by defendants in rebuttal." 442 U.S. at 160–61, 99 S.Ct. at 2226–2227. The Court found the presumption to be a permissive one and not violative of due process. "In short," the Court said, "the instructions plainly directed the jury to consider all the circumstances tending to support or contradict the inference that all four occupants of the car had possession of the two loaded handguns and to decide the matter for itself without regard to how much evidence the defendants introduced." 442 U.S. at 162, 99 S.Ct. at 2227.

A jury instruction that the law presumes a person intends the ordinary consequences of his voluntary acts was held a violation of the fourteenth amendment in *Sandstrom.* The jury instructions did not inform the jury that the "presumption could be rebutted ... by the defendant's simple presentation of 'some' evidence; nor even that it could be rebutted at all." 442 U.S. at 517, 99 S.Ct. at 2455. The Court found that a "reasonable jury could well have interpreted the presumption as 'conclusive'...." *Id.* The Court held that because the jury could have interpreted the instructions as either constituting a burden shifting presumption or a conclusive presumption, the defendant had been deprived of his right to due process of law.

In *State v. Mincey,* the trial judge instructed the jury that a person is presumed to intend the ordinary consequences of his use of a dangerous weapon but the presumption could be overcome by contrary evidence which might create in the minds of the jury a reasonable doubt as to the defendant's intent. The instructions further provided that in the absence of evidence to the contrary the presumption must prevail. Our supreme court concluded that the presumption was constitutionally infirm because it shifted to "appellant the burden of persuasion on the element of intent by re-

quiring appellant to introduce evidence that would overcome the presumption set forth in the instructions." 130 Ariz. at 398, 636 P.2d at 646. The court reversed the murder conviction "because it is unclear from the record that the jury was not influenced beyond a reasonable doubt by the erroneous instructions. . . ." *Id.*

Resolution of Forrester's contention depends on whether the presumption is mandatory or permissive. A mandatory presumption "tells the trier that he or they must find the [ultimate] fact upon proof of the basic fact. . . ." *Ulster County,* 442 U.S. at 157, 99 S.Ct. at 2225. A permissive presumption is one "which allows—but does not require—the trier of fact to infer the [ultimate] fact from proof by the prosecutor of the [basic fact]". . . . *Id.* "In deciding what type of inference or presumption is involved in a case, the jury instruction will generally be controlling. . . ." *Id.* at n. 16. Here, the instruction to the jury followed the wording of the statute verbatim.

 "Where the ultimate fact is an element of the crime charged, it may not rest on a mandatory presumption." *Williamson v. State,* 248 Ga. 47, 281 S.E.2d 512, 519 (1981). Presumptions which act to preclude consideration of an element of a crime conflict with the presumption of innocence so fundamental to our system of justice. *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The effect of such conclusive presumptions is to relieve the state of its burden of proving beyond a reasonable doubt every element of the crime charged, thereby violating the due process clause of the fourteenth amendment. *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

In this case, the basic or evidentiary fact was the deposit of the notice of cancellation by certified or registered mail. The ultimate fact, and an element of the offense

charged, was knowledge of the cancellation. The trial judge's instruction and A.R.S. § 13–1201.1 require that the jury find that the credit cardholder is to have notice or knowledge of the cancellation once it is deposited in the mail. Thus, the trial judge gave the jury no choice but to find the ultimate fact, upon proof of the basic fact, and he failed to inform the jury that (1) it could ignore the presumption upon affirmative proof by Forrester rebutting it or (2) it could ignore the presumption even if there was no affirmative proof offered in rebuttal.

A statute similar to the one at issue here was declared unconstitutional by the Supreme Court of Louisiana in *State v. Williams,* 400 So.2d 575 (La.1981). In *Williams,* the court considered a statute which provided that the use of a credit card more than five days after written notice of cancellation of the card has been deposited in the mail is presumed evidence that the person used the card with intent to defraud. The court noted that the presumption could stand only if proof of the evidentiary facts of mailing of the cancellation notice, the passage of five days and the use of the revoked credit card, would on its face, constitute proof beyond a reasonable doubt of the ultimate fact of use of the credit card with the specific intent to defraud. *Id.* at 579.[2]

The court stated that it was not prepared to say that the evidentiary or basic facts were "indicative of notice and fraudulent use beyond a reasonable doubt." *Id.* at 580. The court found that there were too many other reasonable explanations. "[T]he issuee may not be present at the address when the notice arrives; the notice may have been lost, destroyed, delayed or misrouted either by the postal authorities or by some third person present at the address to which the notice was sent; and even the

---

2. In *Sandstrom,* the United States Supreme Court expressly declined to decide whether a mandatory presumption on an element of the offense may never be harmless error. 442 U.S. at 526–27, 99 S.Ct. at 2460. In keeping with our duty to uphold the constitutionality of legislative enactments where possible, *State v.*

*Garza,* 128 Ariz. 8, 10, 623 P.2d 367, 369 (Ct. App.1981), we have analyzed the presumption to determine whether "the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt." *Ulster County,* 442 U.S. at 167, 99 S.Ct. at 2230.

issuee may have actually received the notice but was unable to notify a third party authorized possessor" of the credit card. *Id.*

There are comparable reasons why it cannot be reasonably inferred that the proof of the mailing of the notice of cancellation here is presumptive of knowledge of cancellation. The mailed written cancellation can be lost, destroyed, delayed or misrouted by the postal authorities. The cardholder may no longer reside at the address to which the mailing was sent and, the letter can be received by some third person other than the cardholder as was contended here by Forrester. Thus, we find that A.R.S. § 13–2101.1 is unconstitutional insofar as it contains a presumption that the "written notice shall be presumed to have been given to any cardholder when deposited as certified or registered matter in the United States mail addressed to the person to whom the credit card was issued at such person's last known address."

Having determined that the statute and related jury instruction created an unconstitutional mandatory presumption, we must consider whether fundamental error was committed. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We cannot say, beyond a reasonable doubt, *State v. McVay,* 127 Ariz. 450, 453, 622 P.2d 9, 12 (1981), that the presumption of knowledge did not influence the jury to convict Forrester.

We distinguish, however, between the checks passed before March 22, 1980, and those passed after that date. It will be recalled that on February 22, 1980, the bank

sent the written notice of cancellation to Forrester. Forrester denied receiving the notice and the return receipt was signed by Jay Morris, the son of a woman living with Forrester at the time. We conclude that there was a reasonable possibility that the jury could have found that they were bound to ignore Forrester's contention that he did not receive the notice and that they were bound by the presumption contained in the statute. *See Sandstrom,* 442 U.S. at 517, 99 S.Ct. at 2455.

On March 22, however, Forrester actually signed a document consenting to the closing of his account.[3] The presumption of cancellation was no longer an issue on March 22 when Forrester's knowledge of cancellation could be found from his signature on the document delivered to him by the bank investigator. Even a mandatory presumption will not constitute federal constitutional error where it pertains to an element of the offense which is not an issue at the trial. *United States v. Reeves,* 594 F.2d 536 (6th Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979). Thus, we reverse and set aside Forrester's conviction on all counts pertaining to acts committed prior to March 22 (Counts 2–12) and we affirm Forrester's convictions on all counts pertaining to checks passed subsequent to March 22 (Counts 13–23).

GREER, Acting P.J., and KLEINSCHMIDT, J., concur.

---

3. We note that the statute contemplates that a credit card is to be cancelled by the mailing of the cancellation notice. On March 22 the notice was hand-delivered and acknowledged by Forrester's signature. We find that notice of cancellation has been properly given under such circumstances.

It could be argued that Forrester had knowledge of the cancellation on February 14 when

visited the first time by a bank employee. But her testimony reveals that she neither informed Forrester that the card was cancelled nor did she secure his acknowledgement on any written document. We expressly do not decide whether verbal notice of cancellation would be sufficient under this statute.