Martin KRUCHECK, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 83–35.

Supreme Court of Wyoming.

Oct. 20, 1983.

Thos. J. Fagan and James W. Fagan of Fagan & Fagan, Casper, for appellant.

A.G. McClintock, Atty. Gen.; Gerald A. Stack, Deputy Atty. Gen.; Mary B. Guthrie, and John W. Renneisen, Senior Asst. Atty. Gen., Cheyenne, for appellee.

Before ROONEY, C.J., and RAPER *, THOMAS, ROSE and BROWN, JJ.

* Retired June 13, 1983, but continued to partici-   pate in the decision of the court in this case

BROWN, Justice.

Appellant was convicted by a jury of second-degree murder which is defined in § 6–2–104, W.S.1977 (June 1983 Replacement). In his appeal, he has raised several issues. Because of our disposition of the case, we only address whether the trial court erred in instructing the jury that "the use of a deadly weapon in a deadly or dangerous manner raises a presumption of malice."

We reverse and remand.

At approximately six o'clock p.m. on February 20, 1982, appellant called his girl friend, Dianne Welsh, because the preceding day she had informed him she was returning to her ex-husband, John Welsh. During their telephone conversation on the 20th, Dianne Welsh told appellant that her ex-husband had arrived and spent the previous night with her. Appellant became angry and threatened to kill John Welsh.

Shortly after the telephone conversation, appellant arrived at the residence of Dianne Welsh and rang the doorbell. John Welsh answered the door, and appellant struck him. As Welsh started to fall, appellant swung his arm around and pointed a gun at him. The gun fired mortally wounding Welsh. Thereafter appellant was charged with first-degree murder.

The case then proceeded to trial on September 20, 1982. The jury was instructed on first-degree murder, second-degree murder, and manslaughter. It was also instructed over an objection that: "You are instructed that the use of a deadly weapon in a deadly or dangerous manner raises a presumption of malice."

■ After the jury retired for its deliberations, it requested additional instruction. The district court provided it with the following supplemental instruction:

"The Jury having submitted to the Court the following question: 'Does the presence of malice preclude a manslaughter conviction?'; the Court instructs the Jury as follows: 'Not necessarily', but a finding of malice, where the other elements

for voluntary manslaughter have also been found, would preclude a manslaughter conviction."

The jury found appellant guilty of second-degree murder after receiving the additional instruction.

Rule 303(c) of the Wyoming Rules of Evidence provides:

"Whenever the existence of a presumed fact against the accused is submitted to the jury, the court *shall instruct* the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court *shall instruct* the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt." (Emphasis added.)

By using the words "the court shall instruct," the rule mandates that when the rule becomes applicable, the court must instruct the jury as is provided.

■ Here, the jury was instructed that "the use of a deadly weapon in a deadly or dangerous manner raises a presumption of malice." That constituted the submission to the jury of "the existence of a presumed fact," thus triggering the operation of Rule 303(c), supra. Under that rule the jury then must have been told explicitly that the presumption was permissive and not mandatory in nature.

■ Rule 303(c), W.R.E., also requires that when the existence of an element of a crime may be presumed, the jury shall be instructed that the element must be proven beyond a reasonable doubt. Here, malice was an element of the offense of second degree murder. Accordingly, contemporaneous with a jury instruction that malice may be presumed from the use of a deadly weapon, the jury should also have been told that the existence of malice must be proven beyond a reasonable doubt. The trial court's failure to so instruct in this case constituted error.

pursuant to order of the court entered June 13, 1983.

Further, not only was the court's failure to so instruct error under the Wyoming Rules of Evidence, it was also error under the due process clause of the Fourteenth Amendment to the United States Constitution. The United States Supreme Court has stated that the Fourteenth Amendment requires states to "prove every element of a criminal offense beyond a reasonable doubt." *Sandstrom v. Montana,* 442 U.S. 510, 512, 99 S.Ct. 2450, 2453, 61 L.Ed.2d 39, 43 (1979).[1] This principle was expounded upon at length in the Sandstrom decision and held to prohibit not only a mandatory presumption, but any presumption which a reasonable juror may read as mandatory.

In that case, Sandstrom was charged with the crime of "purposely or knowingly caus[ing] the death of Annie Jessen." The jury was instructed that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom v. Montana,* supra, 442 U.S. 512, 99 S.Ct. 2453, 61 L.Ed.2d 43. The Supreme Court observed that it was possible for the jury to have viewed that instruction as requiring it to apply the presumption. Specifically, that court noted:

"* * * They [the jurors] were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory. [Citations.]" *Sandstrom v. Montana,* supra, 442 U.S. 515, 99 S.Ct. 2454, 61 L.Ed.2d 45.

In a case decided within two weeks of *Sandstrom,* the United States Supreme Court set out an example of a presumption that the constitution sanctioned. *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). There, three males were prosecuted for possession of a firearm. The New York statute in question specifically provided that the presence of a firearm in an automobile was presumptive evidence of its possession by all persons occupying the vehicle. The judge instructed the jury that:

" 'Our Penal Law also provides that the presence in an automobile of any machine gun or of any handgun or firearm which is loaded is presumptive evidence of their unlawful possession.

" 'In other words, those presumptions or this latter presumption upon proof of the presence of the machine gun and the hand weapons, you *may infer and draw a conclusion* that such prohibited weapon was possessed by each of the defendants who occupied the automobile at the time when such instruments were found. The presumption or presumptions is [sic] effective only so long as there is no substantial evidence contradicting the conclusion flowing from the presumption, and the presumption is said to disappear when such contradictory evidence is adduced.

" 'The presumption or presumptions which I discussed with the jury relative to the drugs or weapons in this case need not be rebutted by affirmative proof or affirmative evidence but may be rebutted by any evidence or lack of evidence in the case.' " (Emphasis added.) *County Court of Ulster County v. Allen,* supra, 442 U.S. 161, 99 S.Ct. 2227, 60 L.Ed.2d 794, fn. 20.

The Court concluded that the instructions comported with the requirements of the Fourteenth Amendment.

The case before us, however, cannot be distinguished from *Sandstrom,* supra, on the basis of *County Court of Ulster County,* supra. Here the challenged instruction indicated that the use of a deadly weapon raised a presumption of malice. The word "may" was not included as it had been in *County Court of Ulster County v. Allen,* supra. Nothing in the instructions told the jurors that the presumption was not mandatory in nature. Granted, other instructions were given requiring the jury to find the elements of the crime beyond a reasonable doubt in order to convict. But that was also done in *Sandstrom,* and the Supreme Court stated that that was not enough.

1. We commend the state for bringing this case     to our attention.

"The potential for these interpretations of the presumption was not removed by the other instructions given at the trial. It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. [Citation.] But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied. For example, if the presumption were viewed as conclusive, the jury could have believed that although intent must be proved beyond a reasonable doubt, proof of the voluntary slaying and its ordinary consequences constituted proof of intent beyond a reasonable doubt. * * * " *Sandstrom v. Montana,* 442 U.S. 518, 99 S.Ct. 2457, 61 L.Ed.2d 47, fn. 7.

Clearly the Wyoming Rules of Evidence were violated, as was the Fourteenth Amendment. When a jury is authorized to make use of presumptions, it must be informed that it may refuse to use them. As this court has previously said:

" * * * The use of the presumption assists the prosecutor in not having to produce evidence of intention, at least until the presumption is rebutted. But it clearly denies the jury of the opportunity to make up its own minds on the question of intention because there is no probative evidence introduced from which it can base its own finding. In this respect, the presumption instruction is diametrically opposite that of the use of deductions and inferences which the jury may logically and properly draw from facts and circumstances introduced which point toward intention. [Citations.]" *Stuebgen v. State,* Wyo., 548 P.2d 870, 884–885 (1976).

■ The only question remaining is whether the error should be considered harmless. There is some dispute concerning whether the harmless error doctrine may ever be used to ignore the *Sandstrom* error. In *Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the Court split on the question and failed to resolve it. We do not now need to decide this question since the error cannot be said to be harmless beyond a reasonable doubt.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court held "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." We have previously adopted and applied this test in Wyoming. *Ortega v. State,* Wyo., 669 P.2d 935 (1983).

From the jury's question to the judge during its deliberation it is clear that they were concerned about malice. The question would indicate that the jury felt compelled to find malice, but wanted only to convict appellant of voluntary manslaughter. Despite the judge's opening disclaimer, his instruction to the jury provided that if it had found all the elements of voluntary manslaughter, as well as malice, it must convict appellant of second-degree murder.

The resulting conviction of second-degree murder is a demonstration that the jury found malice and all of the elements for voluntary manslaughter. In light of the jury's apparent hesitancy in finding defendant guilty of second degree murder, one logical conclusion is that they felt compelled to presume malice from the use of the gun because of the instructions in the case. It is then reasonable to conclude that if the jury had known that the presumption of malice was not mandatory, it may not have convicted appellant of second-degree murder. The error, then, cannot be regarded as harmless beyond a reasonable doubt, and the conviction must be reversed.

Reversed and remanded for further proceedings not inconsistent with this opinion.

RAPER, Justice, Retired, dissenting, with whom ROONEY, Chief Justice, joins.

I dissent and would have affirmed.

The substance of what follows was intended to be the opinion of the court when first circulated but, due to the vicissitudes of the appellate process could not gather a majority, so it now assumes a dissenting posture. There is more to this case than has been discerned by the superficial and airily abstract views of the majority. The weakness of the majority lies in the facts and all the procedure, including instructions, followed by the trial judge so I will considerably enlarge upon them.

I will also discuss all of the issues because they may arise again during the course of the new trial which is mandated as well as be raised again on appeal, if the defendant is again found guilty of murder in the second degree. It is proper for this court to decide questions which are bound to arise again in a new trial of the case. *Hursh Agency, Inc. v. Wigwam Homes, Inc.,* Wyo., 664 P.2d 27 (1983); *Rocky Mountain Oil and Gas Association v. State,* Wyo., 645 P.2d 1163 (1982); *Madison v. Marlatt,* Wyo., 619 P.2d 708 (1980); *McGuire v. McGuire,* Wyo., 608 P.2d 1278 (1980); *Chicago & N.W. Ry. Co. v. City of Riverton,* 70 Wyo. 84, 119, 247 P.2d 660 (1952). As said in *Chicago & N.W. Ry. Co. v. City of Riverton,* supra, it is this court's duty to do so. While the above citations are to civil cases, the same principle would apply to criminal cases. Besides that, for the purposes of this appeal, it accords an opportunity to examine more facts which support my position.

For those, if any, who want only to read my views with respect to the majority's bare-bones disposition, see Parts IV and V of this dissent. I strongly suggest that at least the trial judge and counsel read this dissent in its entirety and note in particular the discussion with respect to WPJIC § 7.502, in which there is an error in the second element in that it does not follow the statute, prompting the trial judge to

give the corrective instruction about which appellant complains in his fifth issue.

In this appeal, we are called on to review the second-degree murder [1] conviction of Martin L. Krucheck (appellant). He was tried for first-degree murder and found guilty by a jury of the lesser-included offense of second-degree murder. Appellant phrases the issues to be in the order stated:

1. "Whether the defendant should have been allowed to change his plea from 'not guilty' to that of 'not guilty by reason of mental illness or deficiency' and/or 'unfit to proceed by reason of mental illness or deficiency', which Motion was denied by the Court?"
2. "Whether the evidence supported the jury's verdict of 'guilty' of Murder in the Second Degree?"
3. "Whether the Court properly refused to give defendant's requested instructions designated 'A', 'B', 'C', and 'D'?"
4. "Whether the Court erred in giving instructions numbered '10', '21' and '22' over the objections of the defendant?"
5. "Whether the Court erred in instructing the jury, during the jury's deliberations, on the issue of malice, as contained in the supplemental instruction?"

It should be noted that one of the bases upon which the majority founds its decision is Rule 303(c), W.R.E., which caused me concern and I first pointed that out to the court. In the case of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the other basis for the majority was cited to the court by the State as it ethically should have been. But both are easily overcome, in my view of the *whole* case.

On February 20, 1982, appellant shot and killed John Welsh at the apartment where Dianne Welsh, John's ex-wife, was residing. In doing so, appellant brought to a close, once and for all, a triangle relationship in-

---

1. Appellant was found guilty of second-degree murder as defined in § 6–4–104, W.S.1977:

   "Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and shall be imprisoned in the penitiary

   for any term not less than twenty (20) years, or during life."

   He was sentenced to serve not less than 20 years nor more than 20 years and one month in the State Penitentiary.

volving appellant, Dianne Welsh, and John Welsh.

John and Dianne Welsh had been married; they were divorced in June, 1981 after a year of marriage. Beginning in July, 1981, one month after her divorce, Dianne and appellant began a relationship that soon became intimate. Their relationship developed to the point that marriage was contemplated, but never took place because Dianne still had strong feelings for her ex-husband, John, and so was unable to make a commitment to appellant.

During the fall and winter of 1981, Dianne vacillated between her ex-husband, John, and appellant. She, at various times during that period, enjoyed an intimate relationship with both men. Although Dianne lived with appellant off and on during their relationship, she moved out several times to live with her ex-husband, John. In early January, 1982, she moved out of appellant's residence for the last time and accompanied her ex-husband to Evanston, Wyoming.

Dianne remained in Evanston with John for six or seven weeks with brief visits back to Casper. On those return visits, she saw and spoke to appellant. The week before John's death, John and Dianne decided to resume residence in Casper. Dianne first returned to Casper and there awaited John's arrival. On February 19, 1982, the night before John's death, Dianne saw appellant. She told appellant that although she still had "feelings" for him, she was back together with John. Later that night, John arrived from Evanston and spent the night with Dianne.

On February 20, appellant called Dianne. He asked her if John had arrived the night before and if they had slept together. When Dianne told him that John had arrived the night before and that they had indeed slept together, appellant became very angry. Appellant's anger rose to the point that he made threatening statements to Dianne. He threatened to kill John. John, upon learning of the threats, made plans to leave town to avoid a confrontation with appellant. He never had time to carry out that plan.

Shortly after that telephone conversation, appellant knocked on the door where Dianne and John were staying. John answered the door and was confronted by appellant. Appellant greeted John with the remark, " 'Hi, zit face,' " and struck him, knocking him down. As John was falling, appellant's arm swung around and a revolver that he was holding discharged. The shot hit John in the chest, fatally wounding him.

After the shooting, appellant expressed remorse and disbelief at what had just transpired. He remained at the scene and awaited the police. When the police arrived, he was arrested and charged with the murder of John Welsh.

The criminal complaint and subsequent information filed in this case charged appellant with first-degree murder. At his arraignment in June 1982, appellant entered a plea of not guilty. In July 1982, appellant filed the first of several motions requesting the court to allow him to change his plea from " 'not guilty' " to " 'not guilty by reason of mental illness or deficiency' and/or 'unfit to proceed by reason of mental illness or deficiency.' " All were denied.

The case proceeded to trial. Appellant was tried before a jury on the charge of first-degree murder. The jury was instructed on first-degree murder as well as the lesser-included offenses of second-degree murder and manslaughter. After deliberation, in which the court was requested to give and did give a supplemental instruction on manslaughter, the jury found appellant guilty of second-degree murder. This appeal followed. Other facts pertinent to an adequate discussion of the issues will be developed as necessary.

I

The appellant waived a preliminary hearing before the county court. An information was thereupon filed in the district court. Thereafter at arraignment appellant entered a plea of not guilty. Appellant then filed a motion for an order allowing

him to enter a plea of " 'not guilty by reason of mental illness or deficiency' and/or 'unfit to proceed by reason of mental illness or deficiency' " on the ground that "the best interests of justice would be served." From the court file it appears an order was entered denying the motion for the reason no cause was shown as required by § 7–11–304(c), W.S.1977. It also appears that the presence of a reporter was waived. Apparently, the only showing was that appellant's counsel had talked with a psychiatrist and she agreed appellant should be permitted to change his plea. No evidence was taken or documentary support presented. There was then filed a motion for rehearing of the motion for change of plea, supported by a memorandum by counsel for appellant. In it are related various conversations with the same local psychiatrist indicating a present mental condition of some undefined sort. It appears the doctor was not conveniently available for more precise information.

A second motion for rehearing was filed but no action was taken. As a preliminary matter, on the trial date appellant's counsel renewed the motion for rehearing. The trial transcript discloses it was then overruled.

Section 7–11–304(c), supra, provides:

"(c) Evidence that a person is not responsible for criminal conduct by reason of mental illness or deficiency is not admissible at the trial of the defendant unless a plea of 'not guilty by reason of mental illness or deficiency' is made. *A plea of 'not guilty by reason of mental illness or deficiency' may be pleaded orally or in writing by the defendant or his counsel at the time of his arraignment. The court, for good cause shown, may also allow such a plea to be entered at a later time.* Such a plea does not deprive the defendant of other defenses." (Emphasis added).

---

**2.** I note, however, that in the county court transcript, filed with the district court when appellant was bound over, there appears a letter to appellant's counsel from the same psychiatrist whom counsel relied upon which states, "[m]ental status examination revealed

The appellant must make more of a showing of good cause than that presented at the unreported hearing, as reflected by the court's order overruling the motion. If the local psychiatrist who made an examination of appellant had been present to testify, or her deposition had been taken and filed, appellant's position might have some basis. Counsel should not impose upon a court his personal views or ask a court to accept his vague hearsay representations about his client's mental condition requiring expert testimony. The motion was filed on July 8, 1982. The case was tried beginning on September 20, 1982. While motions for rehearing were made, no supporting material was presented; no medical report and no affidavit of the psychiatrist as to mental condition were ever filed.[2] Appellant had plenty of opportunity to gather such information. In such matters, a court is not required to rely alone upon the hazy representations of counsel.

Colorado has a statute identical in pertinent part to § 7–11–304(c), supra. In *Garza v. People,* 200 Colo. 62, 612 P.2d 85 (1980), the court held that ultimately the question of good cause is one addressed to the sound discretion of the trial judge and absent a clear abuse of discretion, his ruling will not be disturbed on appeal. In the case now before this court, the record shows no abuse of discretion.

Section 7–11–302, W.S.1977, covers a lack of capacity, "as a result of mental illness or deficiency" to be tried, sentenced or punished if an accused is unable to comprehend his position, understand the proceedings against him, conduct his defense rationally and cooperate with his counsel. This question may be raised at any stage, even by the court on its own motion, but again there must be "reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed." Section 7–11–303(a), W.S.1977. I place the same

no evidence of major mental disorder including thought disorder, auditory or visual hallucinations, paranoid ideation, delusions or uncontrollable behavior." It was also noted appellant was depressed by events that had transpired.

standard on resolving the issue. There must be more than a lawyer's assertions to justify an inference that appellant was not competent to stand trial. *State v. Williams,* 122 Ariz. 146, 593 P.2d 896 (1979). It is within the sound discretion of the trial judge and a court should not disturb his ruling in the absence of a clear abuse of that discretion.

The trial judge simply had no reliable information before him that the appellant was suffering from the required disability. The reluctance of counsel to present qualified evidence and what even appears to be flimsy excuses why the psychiatrist was unavailable were not helpful. As indicated, a medical report or affidavit of the psychiatrist would have helped the trial judge. He had nothing upon which to base a ruling sustaining the motion. A further reason for doubting the substance of appellant's position is that on the trial date, in preliminary matters, appellant's counsel advised the court that "on behalf of the defendant we would enter a plea of guilty to manslaughter in this particular case without any conditions of any nature being attached to that plea." If the appellant was incapable of standing trial, he was incapable of pleading guilty to a lesser offense. He cannot blow hot and cold in the same breath.

## II

Appellant asserts that the evidence will not support second-degree murder. I would hold that it is more than sufficient. It would even support first-degree murder in that there was premeditation. When reviewing for sufficiency of the evidence in a criminal case, various standards have been routinely applied by this court. The evidence favoring the prevailing party is accepted as true and the evidence of the appellant in conflict therewith is entirely left out of consideration. *Browder v. State,* Wyo., 639 P.2d 889 (1982). The State is given the benefit of those inferences which may be fairly and reasonably drawn from the evidence. *Tillett v. State,* Wyo., 637 P.2d 261 (1981). In *Brown v. State,* Wyo.,

661 P.2d 1024 (1983), it was held in quoting from a wealth of authority that it is not whether the evidence establishes guilt beyond a reasonable doubt for this court but whether it is sufficient to form the essential basis of guilt beyond a reasonable doubt by the jury when viewed in the light most favorable to the State.

In second-degree murder the essential elements which must be proved by the State beyond a reasonable doubt are that the killing, without premeditation, of a human being was done by the accused both purposely and maliciously. Section 6–4–104, supra note 1. The jury had before it all the evidence it needed to reach a verdict of guilt beyond a reasonable doubt.

The testimony of the State was that appellant threatened to kill Welsh; appellant in his direct testimony declared that he had threatened to kill Welsh. On cross-examination appellant testified that he always carried a loaded gun in his pickup, as well as several other hand guns and rifles. He considered himself a safe handler of firearms. The firearms examiner from the State Crime Laboratory testified that the double action hand gun used to kill Welsh was a .38 caliber revolver completely functional having no defects, with a trigger pull of ten pounds if the hammer is down and three and one-half pounds if cocked (hammer back). It was not prone to accidental discharge but would require that the trigger be pulled to effect firing. From the foregoing, a reasonable jury inference would be that the killing was done on purpose and with malice.

Further, as to malice, the evidence discloses that on the day of the homicide, appellant called his lover at the apartment of the victim's brother where the victim was staying. The conversation was not favorable to his continued relationship with her. Appellant, according to his own testimony, threw down the telephone. When he picked it up to resume the conversation, he twice threatened Welsh's life, and said he was coming to the apartment with a gun and would use it.

Appellant's acts at the time of the murder permit an overwhelming inference of malice for the jury. His first action upon encountering Welsh's brother's apartment was utterance of a provocative epithet to the victim, followed by a violent physical assault, knocking the victim to the floor. Finally, appellant's behavior at the time of the shooting itself allows a climatical inference of malice. His firearm held in his right hand followed the fall from the assault. There was a deliberate pointing of the revolver at Welsh as it was discharged. There could be no better evidence of malice than this accumulation of acts manifesting an inference of malice by rational jurors beyond a reasonable doubt.

### III

The trial judge refused to give appellant's offered Instructions A, B, C and D. I will treat them in that order.

Offered Instruction No. A read: "If two conclusions can reasonably be drawn from the evidence, one of innocence, and one of guilt, the jury should adopt the one of innocence." The appellant cites *Eagan v. State,* 58 Wyo. 167, 128 P.2d 215 (1942).

This court has specifically rejected and disapproved the use of such instruction in *Cullin v. State,* Wyo., 565 P.2d 445, 453 (1977), where it was held:

"* *. * That instruction is included in principle in the court's frequent charge to the jury that the defendant must be proven 'guilty beyond a reasonable doubt.' This court has held that 'reasonable doubt' needs no definition because it has a common meaning. *Cosco v. State,* Wyo. 1974, 521 P.2d 1345. The offered instruction is therefore included in other instructions. We disapprove of any use of the offered instruction."

No error that I can see.

Offered and refused Instruction No. B was:

"If two conclusions can reasonably be drawn from the evidence, guilty of one offense, and guilty of a lesser, included offense, the jury should find the defendant guilty of the lesser, included offense."

The trial judge gave an instruction which authorized the jury to find the appellant guilty of a lesser-included offense:

"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged, if the evidence is sufficient to establish his guilt of such lesser offense beyond a reasonable doubt.

"The offense of murder in the first degree, with which the defendant is charged, includes the lesser offense of murder in the second degree and also includes the lesser offense of manslaughter."

This is WPJIC § 1.301. The jury was instructed as to the elements of first-degree murder, second-degree murder, and manslaughter, both voluntary and involuntary.

In *Evanson v. State,* Wyo., 546 P.2d 412, 416 (1976), this court pointed out that for a lesser offense to be " 'necessarily included' " [3] in the offense charged, it must be such that the greater offense cannot be committed without committing the lesser. When first-degree murder as here is charged, there are lesser-included offenses in that the elements overlap. That was explained in *State v. Selig,* Wyo., 635 P.2d 786, 790–791 (1981):

"The elements of the lesser offense of manslaughter are identical to part of the elements of murder in the second degree, and to part of those of murder in the first degree. All three crimes contain the element of killing of a human being. The elements of the lesser offense of murder in the second degree are identical to part of the elements of murder in the first degree. Both contain the elements of the killing of a human being with malice and

---

3. Rule 32(c), W.R.Cr.P., a counterpart of Rule 31(c), F.R.Cr.P., authorizes the jury consideration of lesser-included offenses: "The defend-ant may be found guilty of an offense necessarily included in the offense charged. * * *"

purpose. [Citations.]" (Footnotes omitted.)

The effect of appellant's offered instruction would have been, then, to direct a verdict of manslaughter and remove from the jury its function of determining the offense, if any, committed by the appellant. The facts in this case are subject to three conclusions which can be drawn: first-degree murder; second-degree murder; and manslaughter. The jury must not be deprived of performing its duty. The trial judge was correct in refusing the instruction.

No error appears to me.

Appellant's offered Instruction No. C was:

> "The killing of a human being by accident, misadventure or misfortune, by one exercising due care, and in the performance of a lawful act, and without harmful intent, is not a criminal act if all such facts concur."

This offered instruction is WPJIC § 5.101. The use note and comment demonstrate the impropriety of that instruction in this case:

> " * * * 'The taking of human life by accident, misadventure, or misfortune, while in the performance of a lawful act, exercising due care, and without harmful intent, is excusable; but all such facts must concur [in order for the act not to be criminal], and the absence of any one of them will involve guilt. The homicide must have been committed while the accused was engaged in doing a lawful act, and by lawful means, with ordinary and reasonable care, and without any unlawful or harmful intent. * * *'
>
> " * * * 'Where the theory of the defendant is that the killing or assault was the result of accident or misfortune, and was unintentional, and such theory finds support in the evidence, it is the duty of the court to instruct fully and clearly as to the law relating to accident or misfortune. Such an instruction is, however, unnecessary and properly refused in the absence of evidence tending to show accident or misfortune.' " *Eagan v. State,* supra, 128 P.2d at 222–223.

> " * * * The accidental killing of a human being by another is not a defense, unless caused in the doing of some lawful act. [Citations.]" *Hollywood v. State,* 19 Wyo. 493, 120 P. 471, 478 (1912).

The appellant in this case was doing nothing that was lawful. The evidence emphatically discloses that he threatened, assaulted and shot his victim, without provocation. A defendant has a right to an instruction upon the theory of his case only if there is competent evidence to sustain it. *Jackson v. State,* Wyo., 624 P.2d 751, cert. denied 451 U.S. 989, 101 S.Ct. 2327, 68 L.Ed.2d 848 (1981), and cases there cited.

I see no error.

Appellant's offered Instruction No. D read:

> " 'Heat of passion' means such passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same or similar circumstances as those in question which would cause him to act rashly, without reflection and deliberation, and from passion rather than from judgment."

This is WPJIC § 7.509. Instruction No. 22 given by the trial judge added the emphasized sentence:

> " 'Heat of passion' means such passion as naturally would be aroused in the mind of an ordinarily reasonable person in the same or similar circumstances as those in question which would cause him to act rashly, without reflection and deliberation, and from passion rather than from judgment. *Such passion must have been aroused by provocation of the Defendant by the person who was killed.*" (Emphasis added.)

Appellant contends that it makes no difference how heat of passion is aroused as long as it is present. He further asserts that it was Dianne Welsh rather than John Welsh who aroused his passion through her provocation and the victim was only the innocent beneficiary of that provocation. Appellant cites no authority for his position.

Appellant's position is not sound. The general rule is that in order to reduce murder to manslaughter, the victim must have

been the source of the defendant's provocation generating heat of passion. *State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979); *State v. Fowler,* Iowa, 268 N.W.2d 220 (1978), cert. denied 439 U.S. 1072, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979); *Tripp v. State,* 36 Md.App. 459, 374 A.2d 384 (1977); *People v. Wax,* 75 Ill.App.2d 163, 220 N.E.2d 600 (1966), cert. denied 387 U.S. 930, 87 S.Ct. 2051, 18 L.Ed.2d 991; *State v. Connor,* Mo., 252 S.W. 713 (1923); 40 C.J.S. Homicide § 53; 40 Am.Jur.2d, Homicide, § 57. There is no Wyoming Pattern Jury Instruction, Criminal, covering this principle.

No error, in my view.

Such holding would also dispose of appellant's objection to the court's Instruction No. 22 raised in his fifth issue before this court.

### IV

It is in this part that the majority and I part company. As to appellant's fourth issue, I will first consider appellant's claim of error in the court's giving Instruction No. 10: "You are instructed that the use of a deadly weapon in a deadly or dangerous manner raises a presumption of malice." Appellant objects that the instruction:

> " * * * places the defendant in a position where he has the burden of proving that he is not guilty of malice. * * * [A] defendant in a criminal case, especially a murder case, has no duty to prove anything, much less to prove that he is not guilty of malice."

This objection was sufficient to preserve the question for appellate consideration.

The State has called to our attention *Sandstrom v. Montana,* supra, which raises

the real issue as to Instruction No. 10 for this court to decide. Do the facts and the trial judge's instructions in the case before us fall within the proscriptions of *Sandstrom?*

The defendant in *Sandstrom* was charged with "deliberate homicide" in that he "purposely or knowingly" caused the victim's death. The defendant at trial took the position that though he killed the victim, he did not do so "purposely or knowingly." The trial judge instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" over the objection that such an instruction had the effect of shifting the burden of proof on the issue of purpose and knowledge. The Montana Supreme Court held that due process standards were not violated by the instruction.

The United States Supreme Court held that because the jury may have interpreted the challenged instruction as conclusive or shifting the burden of persuasion, it violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and that the instruction was therefore unconstitutional.

The presence of malice is a required element of first and second-degree murder in Wyoming. *Scheikofsky v. State,* Wyo., 636 P.2d 1107 (1981).[4] The trial judge's instruction on the presumption of malice raised as indicated above thus arguably calls for an analysis as governed by *Sandstrom v. Montana,* supra, the United States Supreme Court's most recent authoritative pronouncement on the validity of evidentiary presumptions in criminal cases. In analyz-

---

4. Instruction No. 7, in pertinent part, given in this case:

"The necessary elements of the crime of murder in the first degree are:

"1. The crime occurred within the county of Natrona on or about the date of February, [sic] 20, 1982; and

"2. The defendant killed a human being; and

"3. The defendant acted purposely; and

"4. With premeditation; and

"5. With malice."

Instruction No. 16, in pertinent part, given in this case:

"The necessary elements of the crime of murder in the second degree are:

"1. The crime occurred within the county of Natrona on or about the date of February 20, 1982; and

"2. The defendant killed a human being; and

"3. The defendant acted purposely; and

"4. With malice."

ing the totality of the instructions, we find no constitutional error in the trial court's presumption instruction.

As *Sandstrom* mandates:

"The threshold inquiry in ascertaining the constitutional analysis applicable to this kind of jury instruction is to determine the nature of the presumption it describes. See *Ulster County Court v. Allen,* ante, at 157–163 [442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) ]. That determination requires careful attention to the words actually spoken to the jury, see ante, at 157–159, n. 16, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom,* supra, 442 U.S. at 514, 99 S.Ct. at 2454. The Court in *Sandstrom* then proceeded to show that even if the presumption as given in the instruction were truly "permissive," [5] which it found the *Sandstrom* presumption of intent from an act's natural consequences not to be, the presumption must be disallowed on *Winship* grounds since a reasonable juror "could easily have viewed such an instruction as mandatory." *Sandstrom,* supra, 442 U.S. at 515, 99 S.Ct. at 2454. I would sustain the presumption instruction since I can and will demonstrate

that the presumption as articulated by the court's instructions is truly permissive, and also that a reasonable juror could not have construed such a presumption as mandatory.

A genuinely permissive presumption "could not conceivably have run afoul of the constitutional decisions cited by the Court in its opinion" (*Sandstrom,* supra, 442 U.S. at 527, 99 S.Ct. at 2461, Rehnquist, Justice, concurring) for the reasons indicated in *County Court of Ulster County, New York v. Allen,* supra note 5. To manifest the genuinely permissive character of the malice presumption instruction, we must examine the "words actually spoken to the jury" as *Sandstrom* requires.

The court's instructions, considered in relation to the constitutional propriety of the malice presumption, may be viewed in three contexts, i.e., jurors' duties and responsibilities, defendants' rights, and evidentiary requirements for the establishment of a fact or element of the crime charged. These contexts, taken together as they must be [6], clearly demonstrate the permissive nature of the malice presumption. In the first context, jurors' duties and responsibilities are included in the court's instructions. Here the court instructed the jury on its nature as exclusive trier of fact; such facts

---

5. The definition of permissive presumptions in County Court of *Ulster County, New York v. Allen,* 442 U.S. 140, 157–158, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979), is instructive here:

"The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. See, e.g., *Barnes v. United States,* supra, [412 U.S. [837] at] 840 n. 3 [93 S.Ct. 2357, 2360 n. 3, 37 L.Ed.2d 380]. In that situation the basic fact may constitute prima facie evidence of the elemental fact. See, e.g., *Turner v. United States,* 396 U.S. 398, 402 n. 2 [90 S.Ct. 642, 645 n. 2, 24 L.Ed.2d 610]. When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. E.g., *Barnes v. United States,* supra, [412 U.S.,] at 845 [93 S.Ct. at 2362]; *Turner v. United States,* supra, [396 U.S.,] at 419–424 [90 S.Ct. at 653–656]. See also *United States v. Gainey,* 380 U.S. 63, 67–68, 69–70 [85 S.Ct.

754, 757–758, 758–759, 13 L.Ed.2d 658]. Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination."

6. "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–147, 94 S.Ct. 396 [400], 38 L.Ed.2d 368 (1973). Accord, *Scheikofsky v. State,* supra, 636 P.2d 1107; *Loy v. State,* 26 Wyo. 381, 185 P. 796 (1919); *Flanders v. State,* 24 Wyo. 81, 156 P. 1121 (1916); *Roberts v. State,* 11 Wyo. 66, 70 P. 803 (1902).

to be determined *solely* from the *evidence presented*.[7] Furthermore, the court closely admonished the jury to consider each of its instructions in the light of all the others; no instruction was to receive undue emphasis derived from a single sentence or individual point.[8] The court also instructed unmistakably on the nature of the defendant's constitutional rights to due process in the fact-finding process. Instructions were given both on the presumption of innocence and, to emphasize the prosecution's responsibility to prove beyond a reasonable doubt each and every element of the offense charged, on the fact that defendant is *not required* to prove his innocence.[9] Finally, the court's instructions made amply manifest the rigorous standard of proof beyond a reasonable doubt required for the estab-

lishment of every fact and element of the crime charged. The jurors were repeatedly informed that every element of the principal crime charged, first-degree murder, as well as of every possible lesser-included offense, had to be found by them beyond a reasonable doubt, and further that if any element were not so found *by them,* that element, and necessarily the crime thereby implicated, could not and must not be established.[10] Any reasonable juror who had received these instructions was thus clearly aware of his duty to find all the required elements of the crimes charged beyond a reasonable doubt, and his duty to acquit if he could not do so from and only from the prosecution's evidentiary case in chief.[11]

Pursuing the *Sandstrom* analysis along another line of development, I pass to a

---

7. Instruction No. 1, in pertinent part:
   "You are the exclusive triers of the facts and of the effect and value of the evidence, but you must determine the facts from the evidence produced here in Court. * * *

   \* \* \* \* \* \*

   "In determining any of the questions before you in this case, you should be governed solely by the evidence. * * *"

8. Instruction No. 1, in pertinent part:
   " * * * For that reason, you are not to single out any certain sentence, or any individual point but are to regard all the instructions as a whole, and are to regard each in the light of all the others. * * *"

9. Instruction No. 5, in pertinent part:
   "The law places the burden upon the state to prove the defendant is guilty. The law does not require the defendant to prove his innocence. Accordingly, you must assume that the defendant is innocent unless you are convinced beyond a reasonable doubt and from all of the evidence in the case that he is guilty."

10. Instruction No. 5 included:
    " * * * The test you must use is this: If you have a reasonable doubt as to the proof of any of the elements to be proved, you should find the defendant not guilty. If you have no reasonable doubt as to the proof of any of them, you should find the defendant guilty."
    Instruction No. 7 (instruction on first-degree murder) included:
    "If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

Instruction No. 16 (instruction on second-degree murder) included:
"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."
Instruction No. 18 (instruction on voluntary manslaughter) included:
"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."
Instruction No. 19 (instruction on involuntary manslaughter) included:
"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

11. The sufficiency of these instructions to indicate a purely permissive presumption should be properly compared with those found adequate in *County Court of Ulster County, New York v. Allen,* supra, 442 U.S. at 161–163, 99 S.Ct. at 2227, to guarantee a purely permissive presumption. The similarities are striking. While the instructions in *County Court of Ulster County, New York v. Allen,* supra, used the words "may infer and draw a conclusion" from the presumption, it is my position that all the instructions in the case before us *were permissive.* To allow a permissive use of a presumption need not be expressed in a single word, as enunciated in all the language of *County Court of Ulster County, New York v. Allen,* supra, which went through the same exercise as I do in looking at *all* the instructions.

consideration of the conceptual assumptions underlying the use of the malice presumption as indicated by the Wyoming Rules of Evidence, particularly Rules 301 and 303.[12] The differences between our rules and the Montana rules, the United States Supreme Court characterized as either creating a mandatory presumption or tending to lead a reasonable juror to believe a mandatory presumption had been intended or created,[13] are striking and significant. First to be noticed is the fact that the Montana rules relating to presumptions are intended to apply in undifferentiated fashion to both civil and criminal proceedings. This is not the case in Wyoming; Wyoming Rule of Evidence 301 gives the civil (noncriminal) rule, establishing that *only* in such *noncriminal* actions shall a presumption have the effect of shifting the burden of going forward to the opponent of the presumption, while Wyoming Rule of Evidence 303 mandates a different treatment for presumptions employed in criminal trials. Second, in stark contrast to Montana's Rule 301(a), establishing an apparently universal rule of mandatory presumptions in Montana jurisprudence, nowhere do the Wyoming Rules of Evidence characterize the nature of presumptions as mandatory, or other than per-

missive.[14] And finally, the Wyoming rules specifically provide the special constitutionally required safeguards necessary where presumptions of common-law descent are applied in the criminal context. Wyoming Rule of Evidence 303 provides in terms that the court, when sending a question of fact supported by a presumption to the jury in a criminal trial, shall instruct the jury that they *may* rely on the presumption, but are not *required* to do so, and furthermore that, if reliance is had on the presumption, the fact must still be found beyond a reasonable doubt. Thus, the constitutional perils encountered by a Montana defendant are effectively eliminated by the Wyoming practice, and a *Winship* error is avoided.[15] Thus, the permissive character of the malice presumption as contained in all the court's instructions is well and fairly established. All instructions must be read as one instruction. Instruction No. 10 was not in the same conclusory language as the instruction considered in *Sandstrom.*

Of course, the *Sandstrom* court was not to be persuaded by a theoretically permissive presumption. The evil to be avoided was the jury's *possible* understanding of the presumption as either mandatory ("conclu-

---

**12.** Rule 301, Wyoming Rules of Evidence, in pertinent part, provides:

"(a) *Effect.*—In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence."

Rule 303, Wyoming Rules of Evidence, in pertinent part, provides:

"(a) *Scope.*—Except as otherwise provided by statute, in criminal cases, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this rule.

\*   \*   \*   \*   \*   \*

"(c) *Instructing the jury.*—Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so. In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense,

the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt."

**13.** *Sandstrom v. Montana,* supra, 442 U.S. at 516–517, 99 S.Ct. at 2455.

**14.** In fact, no definition of presumptions is given by the Wyoming Rules of Evidence except the "operational" definition given in Rule 301 requiring a shift in the burden of production in civil actions. It may be noted that the effect of this policy decision not to define presumptions is to create maximum discretion in the interpretation of the effect of presumptions in the fact finder.

**15.** I cite the Wyoming practice similarly in intent to the United States Supreme Court's citation of the Montana rules in Sandstrom, i.e., not to demonstrate their defectiveness or exemplary quality, but as evidence of their probable effect on a reasonable juror. In passing, I note my confidence that the trial judge fully complied with the requirements of Wyoming Rule of Evidence 303 when the instructions are considered as a whole.

sive"), or resulting in a burden shift to defendant on the issue of intent. *Sandstrom v. Montana,* supra, 442 U.S. at 518–525, 99 S.Ct. at 2456–2459. As indicated, I find no possibility that a reasonable juror, receiving the court's instructions on the malice presumption in this case, could reach such conclusions. First, on the question of a reasonable juror's possible understanding of the presumption as mandatory or conclusive, in addition to the indications of permissiveness given by the court's instructions, there is the wholly persuasive fact that the court also carefully defined malice for the jury.[16] The obvious and natural interpretation of this event is that the fact finder would need such a definition to find the fact *by itself.* No reasonable juror could possibly understand the definition to be surplusage in light of the court's other instructions on his duties and responsibilities. A reasonable juror could reasonably receive such an instructional definition only on the assumption that he was intended to use the definition *to find the fact so defined.* Thus, the mere possibility that the jury would consider the presumption mandatory is diminished to the vanishing point. Likewise, the anticipatory fear of the *Sandstrom* court that this jury might understand the malice presumption as causing a burden shift to defendant on the issue of malice is obviated by the court's clear instruction that the defendant *cannot* be made to prove his own innocence (see note 9), and by the understanding a reasonable juror would have of the distinctions created by Wyoming Rules of Evidence 301 and 303 that control this case (see note 12). Where the language of instructions in their entirety is clearly permissive, and the underlying evidentiary statutes establish as a matter of law that no burden shift may occur as a result of the employment of presumptions in criminal cases, there need be no anxiety of a reasonable juror making such a mistake. Unlike in *Sandstrom,* no burden of proof or persuasion was shifted to the ap-

pellant. I do not take, nor did the trial judge take, a position like that of the Supreme Court of Montana that allocation of " '*some* burden of proof' " (emphasis in original) to a defendant is permissible. *Sandstrom v. Montana,* supra, 442 U.S. at 513, 99 S.Ct. at 2454.

I thus conclude that no constitutional error occurred in this case as a result of the court's instruction to the jury on the presumption of malice arising from the use of a deadly weapon in a deadly or dangerous manner. As indicated throughout this dissenting opinion, I reach this conclusion inasmuch as the twin *Sandstrom* dangers of a statutorily conclusive presumption and the possibility of a mistaken jury on the questions, either of the nature of the presumption as conclusive or permissive, or the possibility of the presumption causing a burden shift to defendant, are entirely absent from this case.

In *Sandstrom,* the question of harmless error was not reached because the Montana court had not considered it. I would make no holding in that regard because I find no error. However, I have explored the subject and pass along the discoveries. Even if there was error, it was harmless and thus not ground for reversal. Rule 7.04, W.R. A.P.

*Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967), reh. denied 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241; and *Hays v. State,* Wyo., 522 P.2d 1004 (1974), inform our judgment that not all trial errors of constitutional magnitude require reversal. Chapman, in establishing the federal rule for harmless error, mandates a reviewing appellate court to inquire whether it may say "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." It is not what the appellate court may think but whether a rational juror could conclude guilt beyond a reasonable doubt.

---

**16.** Instruction No. 9 provides:
" 'With malice' means the commission of a wrongful act done intentionally without legal justification or excuse. The term 'malice'

conveys the meaning of hatred, ill will, or hostility toward another and implies a wicked condition of mind."

I note the recent United States Supreme Court holding in *Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), in which certiorari was granted to answer the question as left open by *Sandstrom,* as to whether such instructional error operates per se to deprive a defendant of due process. The plurality would hold that a conclusive presumption is never harmless.[17] It is a plurality opinion of the most indecisive sort which, while entitled to our highest respect, does not compel any conclusion. It was a four-four split. Stevens, Justice, only concurred in the judgment. The dissent, entitled to the same respect, would have held that "[b]ecause the presumption does not remove the issue * * from the jury's consideration, it does not preclude a reviewing court from determining whether the error was 'harmless beyond a reasonable doubt'" and "[w]hile a jury may rely on the presumption instruction as a means of finding [the required element of the charged crime], there may be many cases in which the facts and circumstances so conclusively establish this element that *the instruction is wholly superfluous.*" (Emphasis added.) An equally divided court results in an affirmance and has no precedential value. *Ringsby v. Dixon,* Wyo., 496 P.2d 179 (1972); *Town of Lovell v. Menhall,* Wyo., 386 P.2d 109 (1963). The question was thus not decided in that the Connecticut Supreme Court never discussed harmless error. *State v. Johnson,* Conn., 440 A.2d 858 (1981). The plurality opinion in Connecticut is at variance with the overwhelming proportion of cases deciding this issue. See, e.g., *United States v. Winter,* 663 F.2d 1120 (1st Cir.1981); *Healy v. Maggio,* 706 F.2d 698 (5th Cir.1983); *Engle v. Koehler,* 707 F.2d 241 (6th Cir.1983); *Conway v. Anderson,* 698 F.2d 282 (6th Cir. 1983); *Johnson v. Balkcom,* 695 F.2d 1320 (11th Cir.1983); *Rock v. Coombe,* 694 F.2d 908 (2nd Cir.1982); *Phillips v. Rose,* 690 F.2d 79 (6th Cir.1982); *Glenn v. Dallman,* 686 F.2d 418 (6th Cir.1982); *Tweety v. Mitchell,* 682 F.2d 461 (4th Cir.1982); *Man-cuso v. Harris,* 677 F.2d 206 (2nd Cir.1982); *Mason v. Balkcom,* 669 F.2d 222 (5th Cir. 1982); *Krzeminski v. Perini,* 614 F.2d 121 (6th Cir.1980); *Hammontree v. Phelps,* 605 F.2d 1371 (5th Cir.1979); *People v. Mitchell,* 58 N.Y.2d 368, 461 N.Y.S.2d 267, 448 N.E.2d 121 (1983); *People v. Woods,* 416 Mich. 581, 331 N.W.2d 707 (1983); *People v. Roder,* 33 Cal.3d 491, 189 Cal.Rptr. 501, 658 P.2d 1302 (1983); *State v. McCullum,* 98 Wash.2d 484, 656 P.2d 1064 (1983); *State v. Forrester,* 134 Ariz. 444, 657 P.2d 432 (1982); *Johnson v. State,* 249 Ga. 621, 292 S.E.2d 696 (1982); *State v. Hardy,* Mont., 604 P.2d 792 (1980); *State v. Heads,* La., 385 So.2d 230 (1980).

The instruction on presumption was in all likelihood superfluous because of the overwhelming evidence of malice other than use of the firearm, which I have heretofore set out in some detail but summarize for this part of the dissent. On the day of the homicide, appellant telephoned his lover at an apartment where his victim was staying. He became angry when she professed her plan to remain with the victim. Appellant then threw down the telephone, picked it up, twice threatened Welsh's life and said he was coming to kill him. At the time of the murder, he called Welsh a " 'zit face,' " followed by a violent assault knocking Welsh to the floor, deliberately pointed the handgun at Welsh and fired. What more in Heaven's name must we demand to prove malice and convict of murder!

As a part of his fourth issue, appellant challenges the court's Instruction No. 21 on the ground that "he cannot be found 'guilty' of either Murder in the First Degree or Murder in the Second Degree, regardless of what his intent or mental condition prior to the homicide was." He argues that the words in the instruction "intent to kill" force the jury to find there was a previous intent to kill and that it was "abandoned before the homicidal act was committed."

Instruction No. 21:

state court decision.

---

17. The court in *Connecticut v. Johnson,* supra, does not so hold in terms; it merely affirms the

"The sudden heat of passion on the part of the defendant will not reduce the crime from murder to manslaughter where the defendant entertained a previous intent to kill, unless it appears that such intent was abandoned before the homicidal act was committed."

That instruction came verbatim from WPJIC § 7.506. It is a correct statement of the law with respect to manslaughter when charged as a lesser-included offense to murder. *State v. Spears,* 76 Wyo. 82, 300 P.2d 551, 566 (1956). Section 6–4–107, W.S. 1977, defines manslaughter:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, *upon a sudden heat of passion,* or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years." (Emphasis added.)

Under the facts of this case the heat of passion was not a sudden flareup caused by the provocation of his victim when encountered face to face. The evidence indicates that his intent to kill was formed when he telephoned the Welsh apartment and at that time announced his intent to kill, armed himself, traveled to the victim's location and proceeded to carry out his threat. There is no evidence that at any time his intent was abandoned. A "sudden heat of passion" is inconsistent with an already formed intent.

The rule is of long standing and was announced by the Supreme Court of the United States in *Collins v. United States,* 150 U.S. 62, 14 S.Ct. 9, 37 L.Ed. 998 (1893), where it was articulated in a little different fashion to say that if the defendant in a moment of passion, and without any previous preparation, did the shooting, the offense would be manslaughter and not murder; but, if he prepared himself to kill, and had a previous purpose to do so, then the mere fact of passion would not reduce the crime below manslaughter.

It was a jury decision as to whether there was a previous intent to kill, whether there was a sudden heat of passion, and whether there had been an abandonment of a previously formed intent to kill. No error here that I can see.

I have in Part III disposed of appellant's issue with respect to Instruction No. 22 and would have found no error.

V

Finally, appellant protests as error the court's giving of a supplemental instruction in response to a question by the jury after it had returned:

"The Jury having submitted to the Court the following question: 'Does the presence of malice preclude a manslaughter conviction?'; the Court instructs the Jury as follows: 'Not necessarily', but a finding of malice, where the other elements for voluntary manslaughter have also been found, would preclude a manslaughter conviction."

Before responding to the jury's question, the trial judge conferred in chambers with all counsel. At that time, he advised counsel of his proposed response. Appellant's counsel objected on the ground that the court's proposal was "an automatic direction by the Court for the jury to find the defendant guilty of second degree murder, at least." Appellant also thought there was some relationship between this instruction and Instruction No. 10 (see Part IV) in that it compounded what appellant conceived to be error in Instruction No. 10. He further suggested that the court's response should only refer the jury to the instructions already given and state them to be adequate for a full consideration of the case.

In *Hoskins v. State,* Wyo., 552 P.2d 342 (1976), this court approved the rule that in reviewing the propriety of a supplemental instruction given the jury, the instructions have to be considered as a whole and the supplemental instruction examined in the light of the other instructions previously given.

Section 6–4–107, supra, defining manslaughter, quoted in an instruction, specifi-

cally states, "[w]hoever unlawfully kills any human being *without malice* * * * is guilty of manslaughter." (Emphasis added.) It is obvious then that even though the other elements of manslaughter may be present, if the killing was with malice, then it is not manslaughter but murder. The absence of malice is essential to the crime of manslaughter. See 40 C.J.S. Homicide § 45.

I am puzzled (a euphemism) by the majority's offhand statement in this regard that the

" * * * logical conclusion is that they [the jury] felt compelled to presume malice from the use of the gun because of the instructions in the case. It is then reasonable to conclude that if the jury had known that the presumption of malice was not mandatory, it may not have convicted appellant of second-degree murder. * * *"

That is a speculative sophism.

The real reason for the question lies in conflicting instructions as originally given to the jury. The trial judge first gave WPJIC § 7.501:

"Pertinent portions of the Wyoming statutes provide as follows:

"'Whoever unlawfully kills any human being *without malice,* expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter...'" (Emphasis added.)

He followed that with WPJIC § 7.502:

"The necessary elements of voluntary manslaughter are:

"1. The crime occurred within the county of _____ on or about the date of _____; and

"2. The defendant killed a human being [*words 'without malice' missing* !]; and

"3. The defendant acted voluntarily

"4. Upon a sudden heat of passion.

"If you find from your consideration of all the evidence that any of these elements has not been proved beyond a rea-

sonable doubt, then you should find the defendant not guilty.

"If, on the other hand, you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty." (Bracketed material and emphasis added.)

Note that WPJIC § 7.502 in the second element omits the words of the statute, "without malice." The trial judge did no more in his corrective language than straighten out a pattern instruction that is incomplete in part. It bears no relation whatsoever as to any presumption.

I would have affirmed.